UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHRYN HARDY,

        Plaintiff,

v.                                                           CIVIL CASE NO. 07-10170
                                                              HON. MARIANNE O. BATTANI

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT
ON THE ADMINISTRATIVE RECORD AND DENYING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

**I.    INTRODUCTION**

Before the Court are the parties' Motions for Judgment on the Administrative Record (Doc. Nos. 14, 15). Plaintiff filed suit alleging Defendant terminated of her Long-Term Disability ("LTD") benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1). For the reasons that follow, the Court denies Plaintiff's Motion for Judgment on the Administrative Record and grants Defendant's Motion for Judgment on the Administrative Record.

**II.    STATEMENT OF FACTS**

Cathryn Hardy was employed as a Licensed Practical Nurse ("LPN") at Oakwood Hospital System ("Oakwood"). Hardy was insured under the Oakwood Disability Policy pursuant to her employment. Eleven years into her employment with Oakwood, Hardy became

disabled. At this time, she was diagnosed with Cutaneous T-Cell Lymphoma ("CTCL"), a chronic, incurable cutaneous cancer, and Sezary Syndrome.

CTCL affects the body's lymphatic system, wherein a patient's white blood cells become malignant and are drawn and deposited to the skin. Nearly 10% of patients diagnosed with CTCL are afflicted with Sezary Syndrome, a related, aggressive form of CTCL. Pl.'s Ex. A. Sezary Syndrome is characterized by a red rash and sloughing of the outer layer of skin. CTCL and Sezary Syndrome can also be accompanied by severe pruritis, or itching. Patients with CTCL and Sezary Syndrome may have raised patches of skin, which are scaled and red. They may also experience large bumps or tumors and breaks in the skin, which can become infected or ulcerated as the disease progresses. Id.

In order to treat and prevent the advancement of CTCL and Sezary Syndrome, Hardy requires regular phototherapy treatment and periodically requires radiation or chemotherapy. Admin. R. 0559-560. Hardy contends that as a result of her illness and its associated treatment, she is afflicted with serious psychological issues, such as depression, anxiety, and bipolar disorder. Admin. R. 0357.

On April 11, 2000, Hardy began a disability leave from Oakwood, due to severe depression, which resulted in a brief hospitalization. Admin. R. 0912-0913. On May 4, 2000, Defendant received Hardy's claim for short-term disability benefits. Admin. R. 0143.

Pursuant to the Oakwood Disability Policy, an applicant for short-term disability benefits must have a medical condition that prohibits her from performing the material duties of her own occupation. Admin. R. 0009. Short-term disability benefits are available for a maximum of 26 weeks, at which time an individual may qualify LTD benefits. Admin. R. 0006. Defendant approved Hardy's claim for short-term disability benefits in early May 2000, after completing an

evaluation of information received from her physicians. Hardy received short-term benefits for the maximum 26-week period prescribed by her coverage. McGee Decl. at ¶ 5.

To be eligible for LTD benefits, the insured's condition must prevent her from performing the material and substantial duties of her own occupation during the elimination period and the first 24 months of disability. Admin. R. 0007. After an individual has received 24 months of LTD benefits, the Oakwood Disability Policy reevaluates the insured's condition as to whether she can perform all of the material and substantial duties of her own or any other occupation. Admin. R. 009. In addition, the Oakwood Disability Policy has a 24-month limitation for benefits paid on disabilities stemming from mental illness. Admin. R. 0024.

Consequently, after paying benefits for 24 months, Defendant reevaluated Hardy's claim to determine her eligiblity for LTD benefits. Admin. R. 0119. During this evaluation, Defendant became aware of Hardy's CTCL and noted that her depression was an "overlapping recurrent condition of lymphoma cancer." Admin. R. 0871. Defendant approved Hardy's LTD benefits on October 1, 2000, based on information furnished by Hardy's psychiatrist, which confirmed that Hardy's psychological ailments prevented her from performing her LPN duties. Admin. R. 0136-0139. While receiving LTD benefits, Hardy also applied for and was granted Social Security Disability benefits. Admin. R. 0776.

On April 10, 2002, Defendant sent a letter to Hardy, notifying her that she was approaching the maximum 24-month period for the receipt of benefits for disabilities caused by mental illness, and that on September 30, 2002, her benefits would be terminated. Admin. R. 0772. Defendant also evaluated Hardy to determine if her CTCL qualified her to continue to receive LTD benefits, as physical medical conditions were not limited to the same 24-month maximum period as mental illnesses. Defendant obtained medical records from her treating

physicians, including Dr. Thomas Anderson, her oncologist, and Dr. Sudha Patel, her primary care physician. Admin. R. 0764-0767.

Defendant's consulting physicians, Dr. Richard Kasper and Dr. Elizabeth Gallup, also prepared reviews of Hardy's medical records. Admin. R. 0768; 0706. Both physicians concluded that Hardy was disabled with CTCL, with a secondary diagnosis of major depression. Admin. R. 0706-0708; 0768-0769. Additionally, Dr. Gallup concluded that Hardy's "estimated work capacity for any occupation was none" and that the severity of her physical condition, compounded with her required treatments, made it "appropriate to be off work." Admin. R. 0706. Based on these recommendations, Defendant's claims manager approved Hardy's LTD benefits under the "any other occupation" definition of disability. Admin. R. 0704.

Hardy received LTD benefits throughout the remainder of 2002 and continued receiving benefits into 2005. Admin. R. 0707-0708. Defendant requested Hardy's updated medical records throughout this time period, to ensure that she continued to meet the qualifications for receipt of LTD benefits. Id. Defendant also required Hardy to complete Activities Questionnaires, which required disclosure of her regular activities and the limitations she faced as a result of her disability. Admin. R. 0525; 0629; 0777. On these questionnaires, Hardy routinely disclosed that when not receiving radiation or chemotherapy, she volunteered at her church and could perform everyday activities. Id. She also disclosed that when undergoing radiation or chemo treatment, something her condition required 6-9 times a year, she was unable to work. Id. Despite these disclosures, Hardy continued to receive LTD benefits.

Defendant arranged to have three days of videotape surveillance of Hardy in December 2005. Admin. R. 0560-0563. The results of this surveillance did not reveal any significant activity on Hardy's part and proved immaterial in Defendant's decision to discontinue LTD

4

benefits. Def.'s Mot. for Entry of J. at 6 n.2.

At this time, Defendant also arranged for Hardy to undergo an independent medical examination with Dr. Michael Dorman, a dermatologist, due to the dermatological symptoms associated with Hardy's condition. Admin. R. 0506. On January 25, 2006, Dr. Dorman examined Hardy.

Based of his examination and an evaluation of Hardy's medical records provided by Defendant, Dr. Dorman concluded that from a "dermatological perspective, there are no restrictions or limitations provided within the available medical records" and that there was "not enough information available to [him] on what specifically the restrictions would be of her attending physician." Admin. R. 0570. He also stated that her tri-weekly, ultra-violet light treatments were consistent with her illness and the preferred course of treatment. He added that her "dermatological impairment did not provide any functional impairment." Admin. R. 0571. In the absence of any functional impairment as it relates to this condition, there are no limitations on physical activities. Id. As such, Dr. Dorman stated that her condition "should not limit employment." Id.

Defendant forwarded Dr. Dorman's recommendation to both Dr. Anderson and Dr. Patel, allowing them to comment on the findings. Admin. R. 0575; 0590. Defendant received no response from Dr. Patel. Dr. Anderson responded on February 23, 2006, and expressed his disagreement with Dr. Dorman's recommendation, stating in part that Hardy's "chronic itching can be as disabling as chronic pain and to deny this patient who is clearly partially disabled by this malignancy would be inexcusable." Admin. R. 0460. Dr. Anderson also stated that it is "not uncommon for patients with generalized itching and pruritis (just as generalized pain) to be partially or completely disabled from their ability to hold a job of any sort." Admin. R. 0459.

Dr. Anderson concluded that Hardy's preferred course of treatment was at minimum "ultra-violet light treatments three times weekly and perhaps additional treatment should her condition worsen." Id.

Defendant forwarded Dr. Anderson's letter to Dr. Dorman. Dr. Dorman subsequently created a second supplemental report. His supplemental report stated that his recommendation was based on Hardy's "physical examination and the chart records that were available at the time." Admin. R. 0345. Dr. Dorman went on to state that he had no doubt that Hardy has "a severe condition, which is chronic and debilitating in nature, which actually can lead to significant further morbidity and possible mortality," but that he believed that "her limitations for being able to return to the workforce, were primarily psychiatric." Admin. R. 0346.

Thereafter, Defendant contacted Dr. Dorman again to request a third review of Hardy's condition. Defendant noted in regard to Dr. Dorman's second supplemental report, "So does he think that his original report stands?" Admin. R. 0402.

Dr. Dorman's third report stated that he did not change his initial conclusion regarding Hardy's ability to work and that "there is no level of dermatological impairment requiring restrictions and limitations and any possible impairment identified from a psychiatric perspective, falls outside the scope of the evaluation and review." Admin. R. 0367.

On March 21, 2006, Defendant submitted Hardy's claim for a psychiatric review. Admin. R. 0455. Dr. Laura Don, Defendant's consulting psychiatrist, concluded that Hardy's psychological issues "precluded her from carrying out her usual life activities" and that although Hardy had exhibited some brief periods of mental stability, these "periods of stability have not exceeded two to three months." Admin. R. 0357.

Defendant also contacted its Vocational Rehabilitation Department ("VRD") to establish whether Hardy's tri-weekly, ultra-violet light treatments would conflict with her ability to maintain full-time employment. The VRD determined that Hardy's treatment would not interfere with her ability to pursue full-time employment. Admin. R. 0229. Consequently, Defendant decided to terminate Hardy's LTD benefits. Id.

Defendant issued a letter to Hardy on May 10, 2006, informing her of its decision to terminate her benefits. The letter stated that her LTD benefits were being terminated on Dr. Dorman's finding that her condition "would not limit [her] employment despite [her] treatment program." Admin. R. 0346. The letter further advised Hardy that there were no medical records within her file to support a finding that she faced restrictions or limitations in the performance of her job as an LPN. Id.

On June 19, 2006, Defendant received a letter from Hardy's counsel, requesting a review of the LTD benefits termination. Admin. R. 0352-0353. Hardy's claim file was forwarded to Defendant's Appeal Unit for consideration. Admin. R. 0059.

On September 12, 2006, Defendant upheld its decision to terminate Hardy's LTD benefits because she could obtain her tri-weekly treatments "around her standard work day" and her required treatment did not "alter her functional ability/restrictions/limitations." Admin. R. 0319.

## III.    STANDARD OF REVIEW

The Sixth Circuit has held that resolving ERISA actions challenging a denial of benefits on motions for summary judgment is improper. Wilkins v Baptist Healthcare Sys., Inc., 150 F.3d 609 (6th Cir. 1998). Rather, courts are "to conduct a 'de novo' or 'arbitrary and capricious review' based solely upon the administrative record and render 'findings of fact' and

7

'conclusions of law' accordingly." Id., at 618-19. In so doing, the district court is "confined to the record that was before the Plan Administrator. See Perry v. Simplicity Engineering, 900 F.2d 963, 966 (6th Cir. 1990).

"In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed.2d 80 (1989), the Supreme Court stated that an administrator's decision to deny benefits is reviewed under a *de novo* standard unless the plan provides the administrator with 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Hoover v. Provident Life and Acc. Ins. Co., 290 F.3d 801, 807 (6th Cir. 2002). Because of the use of the disjunctive "or," if a plan provides an administrator with discretion to determine either eligibility for benefits, or discretion to construe the terms of the plan, then the administrator's decision will be reviewed under the arbitrary and capricious standard. In other words, as long as the plan grants the administrator discretion in either area, then the deferential standard will be employed.

A plan administrator's decision will be upheld under the deferential arbitrary and capricious standard if "it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991). Although the arbitrary and capricious standard is given deference by the court, it does not require the court to "merely rubber stamp the administrator's decision." Jones v. Metro. Life Ins. Co., 385 F.3d 654, 661 (6th Cir. 2004). The court must consider and review "the quality and quantity of the medical evidence and the opinions on both sides of the issue." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 168 (6th Cir. 2003).

## IV. ANALYSIS

### A. Defendant's Denial of LTD Benefits Was Not Arbitrary and Capricious.

### 1. The Policy Provisions Vests Discretion in Defendant.

The Oakwood Disability Policy grants to Defendant "the authority, in its sole discretion, to construe the terms of [the] policy and to determine eligibility hereunder." Admin. R. 0036. Pursuant to this provision, Defendant has the sole discretion to interpret the terms and policies of its disability policy and to determine benefit eligibility. In addition, this vested discretion in Defendant requires the application of the arbitrary and capricious standard of review, as the "application of the highly deferential arbitrary and capricious standard of review is appropriate only when the benefit plan gives the fiduciary or administrator discretionary authority to determine eligibility for benefits." Miller v. Metro. Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991).

A plan administrator's decision regarding a claimant's benefit eligibility will be upheld under the arbitrary and capricious standard if the decision is "rational in light of the plan's provisions." University Hosp. v. Emerson Elec. Co., 202 F.3d 839, 846 (6th Cir. 2000). Further, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989).

In the instant case, Defendant presents sufficient evidence to support its contention that denial of Hardy's LTD disability benefits was not arbitrary and capricious. The report and recommendation of Dr. Dorman, a dermatologist acting as an independent medical examiner, stated that "from a dermatological perspective, there was no restrictions or limitations provided within the available medical records" that would indicate that Hardy could not return to work as an LPN. Admin. R. 0570. This recommendation establishes a "reasoned explanation" for Defendant's decision to terminate Hardy's LTD benefits.

## 2. There is No Medical Evidence Supporting Hardy's Contention that Her CTCL Prevented Her from Maintaining Full-Time Employment.

In order for Hardy to prove her continued eligibility for LTD benefits under Defendant's policy, she must be found to be unable to perform the material and substantial duties of her own occupation as a result of her medical condition. Admin. R. 0007. Hardy presents no medical evidence to support this claim.[1]

Hardy argues that the reports of her treating physicians conflict with Dr. Dorman's conclusion that her CTCL does not interfere with her ability to perform as an LPN. The evidence contained within the record, however, does not support this contention. Even if Hardy presented evidence that proved she was precluded from full-time employment due to her CTCL, a burden she failed to carry, Dr. Dorman's recommendation still requires significant consideration by this Court. It is well established case law that "when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the . . . decision cannot be said to have been arbitrary and capricious." McDonald, 347 F.3d at 169.

Hardy relies in large measure upon Dr. Anderson's letter submitted to Defendant, which was drafted in response to Dr. Dorman's initial report and recommendation. Admin. R. 0459-0460. Although the letter does indicate "disagreement with the findings of" Dr. Dorman, it speaks in generalizations and fails to refer to any specific limitations experienced by Hardy.

---

[1] In addition to the issues analyzed above, the Court acknowledges that a conflict of interest exists in the instant case, because Defendant was required to determine Hardy's eligibility for LTD benefits, and also to pay those same benefits. Existing case law has found that this "dual function creates an apparent conflict of interest. Glenn v. Metlife, 461 F.3d 660, 666 (6th Cir. 2006). This Court weighs this conflict of interest as a "'facto[r] in determining whether there is an abuse of discretion'" on the part of Defendant. (internal citation omitted). Firestone Tire & Rubber, 489 US at 115. Here, the conflict is an insufficient basis to overcome the medical evidence in the record supporting Defendant's decision.

Admin. R. 0459.  Instead, it discusses the general limitations faced by typical patients with CTCL, stating "[i]t is not uncommon for patients with generalized itching and pruritus (just as generalized pain) to be partially or completely disabled from their ability to hold a job of any sort."  Id.  The only limitation that Dr. Anderson discusses that is specific and unique to Hardy is her requirement of "ultra-violet light treatments three times weekly."  Admin. R. 0460.  Upon receipt of Dr. Anderson's letter, Defendant's Vocational Rehabilitation Department determined that this limitation would not prevent Hardy from resuming full-time employment.  Admin. R. 0229.  Therefore, the only medical evidence presented by Hardy that could be construed as supporting her continued receipt of LTD benefits failed to show that she has any physical limitation that adversely affects her work capacity.

Hardy also places great emphasis upon Dr. Dorman's supplemental reports prepared in response to Dr. Anderson's letter.  Hardy argues that Dr. Dorman's creation of supplemental reports is evidence that his recommendation is ambiguous and unclear and therefore, should be discounted.

In his second supplemental report, Dr. Dorman conceded that Hardy's condition was "chronic and debilitating in nature," but remained steadfast in his belief that Hardy's condition did not affect her ability to maintain employment.  Admin. R. 0346.  He also stated his belief that Hardy's "limitations for being able to return to the workforce, were primarily psychiatric."  Id.  At Defendant's request, Dr. Dorman created a third supplemental report which summarized his previous recommendations and confirmed his opinion that Hardy's CTCL did not preclude her from returning to work as an LPN.  Admin. R. 0366-0367.

Hardy cites McDonald v. Western-Southern Life Ins. Co. in support of her contention that a second, supplemental report prepared by a medical expert, who had not received any

additional medical evidence or records, should be discounted. 347 F.3d at 171. The Court declines to read McDonald so broadly. McDonald is distinguishable from the instant case. There, the defendant asked the medical expert to clarify his initial report, which was "ambiguous." The medical examiner's supplemental report was "significantly different than his initial report without any justification for the change." Id. In the present case, although Defendant requested clarification, Dr. Dorman consistently maintained his position that Hardy's medical condition did not hinder her ability to work as an LPN. Admin. R. 0566-0572; 0345-0347; 0366-0367. His unwaivering opinion cannot be characterized as ambiguous, and it provides sufficient grounds for a termination of Hardy's LTD benefits.

### 3. Hardy Is Barred From Raising New Issues Under the Exhaustion Requirement.

Under Defendant's disability policy, claimants with mental illnesses are subject to receive LTD benefits for a maximum 24-month period. Under the policy, mental illness is defined as "mental, nervous or emotional diseases or disorders that are outlined . . . by the American Psychiatric Association." Admin. R. 0024. The policy states that mental illness "does not include those diagnoses which are documented and recognized by the American Psychiatric Association to have an organic cause, specifically, diagnoses caused by the change in a structure of an organ, which cannot be corrected through an appropriate treatment program or regime." Id.

Hardy contends that multiple physicians have acknowledged that her psychiatric condition stems from her CTCL and its related symptoms and treatments. Admin. R. 0706; 0067; 0559-0600. Hardy agues that because her depression and anxiety are a result of her CTCL, an illness that created a change in the structure of her skin, an organ, her psychiatric

12

condition is not limited to the 24-month period under Defendant's aforementioned policy. Therefore, she reasons that Defendant's decision to disregard Hardy's mental condition as derived from her CTCL conflicts with the requirements of Defendant's policy.

Hardy failed to raise this argument during the administrative proceedings. Under authority from the Sixth Circuit, "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit." Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991). "This is the law in most circuits despite the fact that ERISA does not explicitly command exhaustion." Ravencraft v. UNUM Life Ins. Co. of Am., 212 F.3d 341, 343 (6th Cir. 2000). Courts have held that "a plaintiff's failure to exhaust administrative remedies should preclude judicial consideration of the underlying claim under ERISA." Glaze v. Sysco Corp., No. 1:05-1546, 2007 WL 1701931, *3 (S.D. Ind. June 11, 2007). Hardy failed to raise this issue under the administrative review by Defendant . Her "failure to seek administrative review of this claim frustrates the policy reasons for the exhaustion requirement." Glaze 2007 WL 1701931 at *3. Defendant's administrator "never had the chance to focus on this distinct issue when considering [Hardy's] case and hence did not have the chance to change its position on the matter." Id. Therefore, the Court holds that Hardy may not raise the issue here.

### 4. Social Security Disability Determination.

The Court also weighs the impact of Hardy's receipt of Social Security benefits and the Social Security Administration's determination that she was disabled in considering whether Defendant's decision was arbitrary and capricious. The record shows that Hardy applied for and received Social Security disability benefits. Admin. R. 0776. Case law recognizes "a disability determination by the Social Security Administration ("SSA") is relevant in an action to

determine the arbitrariness of a decision to terminate benefits under an ERISA plan." Glenn, 461 F.3d at 667. However, "the SSA's disability determination does not, standing alone, require the conclusion that [the defendant's] denial of benefits was arbitrary and capricious." Calvert v. Firstar Fin., Inc., 409 F.3d 286, 295 (6th Cir. 2005).

The record is unclear as to whether Defendant's administrator considered Hardy's SSA award in its decision to terminate her disability benefits. This not does persuade this Court, however, that Defendant's decision to terminate benefits was arbitrary and capricious. The Sixth Circuit has "found unpersuasive the argument that a defendant's 'silence with regard to the SSA record and findings is evidence that it did not consider them.'" Stano v. Lumbermens Mutual Casualty Co., 2007 WL 171601 (E.D. Mich. 2007). Here, although it is unclear whether Defendant considered the award of SSA benefits at all, "this is only one factor for the court to consider." Id. Defendant has offered a "reasoned explanation, based on the evidence" for terminating Plaintiff's benefits. As a result, its decision to terminate benefits is "not arbitrary or capricious." Davis, 887 F.2d at 693.

In light of the preceding analysis, the Court finds that Defendant did not act arbitrarily and capriciously and that Defendant's decision denying LTD benefits to Plaintiff must be affirmed.

V.     CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record is **DENIED.** It is **FURTHER ORDERED** that Defendant's Motion for Judgment on the Administrative Record is **GRANTED.**

s/Marianne O. Battani

MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: **October 22, 2007**

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK